**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAY ALONZO, | ) |
| | ) Civil Action No. 06 - 1184 |
| | ) |
| Petitioner, | ) |
| | ) Judge Terrence F. McVerry |
| v. | ) Magistrate Judge Lisa Pupo |
| | ) Lenihan |
| WARDEN DAVID WAKEFIELD; | ) |
| PENNSYLVANIA ATTORNEY | ) |
| GENERAL and THE LUZERNE | ) |
| COUNTY DISTRICT ATTORNEY | ) |

Respondents.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II. REPORT

Petitioner, Jay Alonzo, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, wherein he challenges his convictions of drug related charges and resultant sentence. For the reasons that follow, his Petition should be denied.

### A. Relevant Facts

The relevant facts are as follows.

In 2001, police engaged in a series of controlled drug buys with Appellant, who resided at 429 S. River Street in Wilkes Barre. Based upon these drug buys, as well as information acquired from an informant,

police obtained a warrant to search 429 S. River Street. Police executed the search warrant on December 13, 2001. At that time, police found Appellant, alone, in a second floor bedroom. A search of a safe in the bedroom yielded two "fingers" of heroin, cocaine, marijuana, a stolen handgun, and drug paraphernalia. Police also searched Appellant and discovered $2,100.00 in United States currency, including two fifty dollar bills which had been used as pre-recorded buy money in one of the earlier controlled buys.

On September 17, 2002, following a two-day jury trial, the jury found Appellant guilty of three counts of possession of a controlled substance, three counts of possession of a controlled substance with intent to deliver, possession of drug paraphernalia, and receiving stolen property. On October 11, 2002, Appellant filed a petition for appointment of conflict counsel. In his petition, Appellant indicated he was dissatisfied with trial counsel's representation. The trial court conducted an inquiry on the matter, determined counsel had provided adequate assistance and concluded counsel could not be removed until after sentencing.

The court conducted Appellant's sentencing hearing on October 28, 2002 and imposed an aggregate term of seventeen to thirty six years' imprisonment. On November 8, 2002, Appellant filed a motion to modify and reduce sentence, as well as to proceed *in forma pauperis*. On November 13, 2002, Appellant filed another petition for appointment of conflict counsel, which the court granted. On November 26, 2002, trial counsel withdrew and new counsel entered his appearance on th record. Also on November 26th, new counsel filed a notice to appeal with this court.

. . . On direct appeal, Appellant attacked the discretionary aspects of

2

sentencing by claiming the sentencing court failed to provide on-the-record statements regarding the appropriate sentencing ranges under the guidelines, as well as reasons for the sentence imposed. . . Appellant also alleged the trial court erred when it did not grant his initial request for removal of trial counsel. Additionally, Appellant challenged whether the evidence was sufficient to support his convictions. The Court affirmed Appellant's judgment of sentence on January 13, 2004.

Appellant filed his first *pro se* PCRA petition on January 10, 2005, and the court appointed PCRA counsel. On February 10, 2005, the Commonwealth filed a motion to dismiss Appellant's PCRA petition. Following a February 25, 2005 hearing, the PCRA court denied Appellant's petition. Appellant filed another petition for the appointment of conflict counsel on March 15, 2005. The court granted Appellant's petition, and new counsel filed the instant notice of appeal on Appellant's behalf on March 28, 2005.

Sup.Ct.Op. dated February 3, 2006, pp. 1-3 (doc. no. 21-3). On February 3, 2006, the Superior Court affirmed the judgment of the PCRA Court.

## B. Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other

available procedures for judicial review. *See, e.g.*, <u>Castille v.</u>
<u>Peoples</u>, 489 U.S. 346, 351 (1989); <u>Doctor v. Walters</u>, 96 F.3d
675, 678 (3d Cir. 1996); <u>Burkett v. Love</u>, 89 F.3d 135, 137 (3d
Cir. 1996).

It appears that the Petitioner has presented most, but
not all, of his claims to the Pennsylvania courts through his
direct appeal and his PCRA proceedings. As set forth in detail
below, it is also clear that Petitioner has not demonstrated that
he is entitled to federal habeas corpus relief with respect to
any of his claims. Accordingly, this Court will review any
claims the Petitioner has not fully exhausted under the authority
granted in 28 U.S.C. § 2254(b)(2), which provides that a federal
court may deny a petitioner's claims on the merits
notwithstanding a petitioner's failure to comply with the
exhaustion requirement. *See* 28 U.S.C. § 2254(b)(2) (as amended
by The Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (1996).

C. <u>Standard of Review</u>

Section 2254 of the federal habeas corpus statute
provides the standard of review for federal court review of state
court criminal determinations. 28 U.S.C. § 2254. Specifically,
a federal court must accord a presumption of correctness to a
state court's factual findings, which a petitioner can rebut only
by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a

state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). In Williams v. Taylor, 529 U.S. 362 (2000), Justice O'Connor, writing the opinion of the Court for Part II, discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within section 2254(d)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that

principle to the facts of the prisoner's
    case.

Williams, 529 U.S. at 411-13. *See also* Lockyer v. Andrade, 538
U.S. 63 (2003).

    Where the state court fails to adjudicate or address
the merits of a petitioner's claims, the federal habeas court
must conduct a *de novo* review over pure legal questions and mixed
questions of law and fact. Appel v. Horn, 250 F.3d 203, 210 (3d
Cir. 2001).

## D. Ineffective Assistance of Counsel

    Several of Petitioner's claims assert ineffectiveness
of trial counsel and appellate counsel. The Sixth Amendment
right to counsel exists "in order to protect the fundamental
right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368
(1993) (*quoting* Strickland v. Washington, 466 U.S. 668, 684
(1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374
(1986) (the essence of a claim alleging ineffective assistance is
whether counsel's unprofessional errors so upset the adversarial
balance between defense and prosecution that the trial was
rendered unfair and the verdict rendered suspect).

    The Supreme Court has formulated a two-part test for
determining whether counsel rendered constitutionally ineffective
assistance: 1) counsel's performance was unreasonable; and 2)
counsel's unreasonable performance actually prejudiced the de-
fense. Strickland, 466 U.S. at 687. The first prong of the

Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. A defendant is not entitled to relief unless he makes both showings. *Id*. at 687.

On the same day Strickland was decided, the Supreme Court handed down its decision in United States v. Cronic, 466 U.S. 648 (1984), wherein it considered whether the Court of Appeals was correct in reversing a defendant's conviction under the Sixth Amendment without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial. In Cronic, the Supreme Court identified three situations implicating the right to counsel that involved circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id*., at 658-659. In other words, the Court set forth three instances where prejudice was presumed without the need to show actual harm. The first and "[m]ost obvious" was the "complete denial of counsel." *Id*., at 659. In this regard, the Court held that A trial would be presumptively unfair where the accused is

denied the presence of counsel at "a critical stage." *Id*., at 659. Second, a similar presumption is warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*. Third, a presumption of prejudice is assumed where counsel is called upon to render assistance under circumstances "where the likelihood that any lawyer, even a fully competent one, could provide effective assistance is . . . small." *Id*. at 659-60.

After making that determination, the Court held that the fact that trial counsel was given only 25 days to prepare for trial, was young and inexperienced in criminal matters, the charges were complex and grave, and that some witnesses were not easily accessible did not provide a basis for finding a presumption of prejudice. Consequently, the Court remanded the case for analysis under the standards announced in <u>Strickland</u>.

1. <u>Constructive Denial of Counsel</u>

Petitioner first asserts that he suffered from constructive denial of counsel pursuant to the standards set forth in <u>Cronic</u>. In this respect, he claims that trial counsel failed to inform him of trial strategy, refused to investigate or interview key witnesses, refused to file motions to have Petitioner released on bond, represented him less than reasonably during trial, and refused to have fingerprint analysis preformed on the gun found in Petitioner's possession.

Cronic applies only when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Bell v. Cone, 535 U.S. 685, 697 (2002). In Bell, the petitioner argued that his claim fit within the second exception identified in Cronic because his counsel failed to "mount some case for life" after the prosecution introduced evidence in the sentencing hearing and gave a closing statement. In rejecting such claim, the Court held that the aspects of counsel's performance challenged by petitioner-the failure to adduce mitigating evidence and the waiver of closing argument-were the same type of specific attorney errors that are subject to Strickland's performance and prejudice components. Bell v. Cone, 535 U.S. at 697-698.

The same is true for Petitioner's claims - that trial counsel failed to inform him of trial strategy, refused to investigate or interview key witnesses, refused to file motions to have Petitioner released on bond, represented him less than reasonably during trial, and refused to have fingerprint analysis preformed on the gun found in Petitioner's possession. There simply is no basis to find that any of the three situations discussed in Cronic are applicable to Petitioner's case. This is unlike the situation in Appel v. Horn, 250 F.3d 203, 217 (3d Cir. 2001) where the Court found a constructive denial of counsel under Cronic when the defense team conducted no investigation and

did not participate in a pretrial competency hearing prior to the trial judge's acceptance of the defendant's motion to proceed *pro se* because they believed that they were not authorized as the defendant's attorneys during this time period. Here, there simply is no evidence to suggest that Petitioner's trial attorney abandoned him during any critical stage of the proceedings. Thus, <u>Cronic</u>'s presumption of prejudice does not apply.[1]

  2.  <u>Trial Counsel's Alleged Ineffectiveness</u>

       a.  <u>Failure to file bond hearing</u>

Petitioner asserts that trial counsel was ineffective for failing to file a motion for release on bond. Petitioner is not entitled to relief on this claim. In <u>Hassine v. Zimmerman</u>, 160 F.3d 941 (3d Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999), the Court of Appeals held that its role in reviewing an application for habeas corpus was limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction. *Id.* "Federal habeas power is limited to a determination of whether there has been an improper detention by virtue of the state court judgment." *Id.* (internal quotation omitted).

_____

1.  Petitioner makes further claims of constructive denial of counsel with regards to his appellate counsel and PCRA counsel. Again, the record evidence does not support such a claim and Petitioner is not entitled to relief on this claim.

Similarly, federal habeas corpus cannot provide a remedy for a claim of ineffective assistance for failure to file a bond hearing because such error has absolutely nothing to do with the reason for a defendant's current confinement in state custody. Thus, he cannot seek federal habeas corpus relief on this basis. Consequently, this claim is without merit.

b.   <u>Failure to file Suppression Motion</u>

Petitioner further claims that his trial counsel erred by failing to file a suppression motion as to the evidence seized from his apartment. In at least one instance, the Supreme Court has recognized that counsel may render ineffective assistance by failing to pursue a pretrial motion. In <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986), the Court determined that a habeas petitioner could raise a claim of ineffective assistance when his trial counsel failed to file a timely pre-trial motion to suppress evidence allegedly obtained in violation of the Fourth Amendment. Notwithstanding, the Court instructed that the mere failure to file a timely suppression motion does not constitute *per se* ineffective representation. <u>Kimmelman</u>, 477 U.S. at 383. To demonstrate actual prejudice under the second prong of the <u>Strickland</u> test, a petitioner must prove that the Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. <u>Kimmelman</u>, 477 U.S. at 375.

Petitioner's claim is based on the introduction during his trial of the drugs and paraphernalia found by the police when they executed the warrant to search his premises. Specifically, Petitioner claims that the police violated the "knock and announce" rule. In this regard, the Supreme Court has concluded that a police officer's violation of the Fourth Amendment knock-and-announce rule does not require suppression of the evidence obtained in the ensuing search. <u>Hudson v. Michigan</u>, 547 U.S. 586 (2006). Thus, although a police officer's failure to abide by the knock-and-announce rule may violate an individual's right to be free from unreasonable searches under the Fourth Amendment, the exclusionary rule does not apply to evidence discovered in the ensuing search. *Id.* Pennsylvania law is the same. *See, e.g.*, <u>Commonwealth v. Kane</u>, 940 A.2d 483, 485 (Pa. Super. 2007). Consequently, Petitioner is not entitled to habeas corpus relief on this claim because he cannot show that any suppression motion based on an alleged violation of the knock and announce rule would have been successful.

c.   <u>Failure to call witnesses</u>

Petitioner further claims that counsel was ineffective for failing to call witnesses. During Petitioner's PCRA proceedings, the Pennsylvania Courts denied this claim because Petitioner did not establish that any of his proposed witnesses were prepared to cooperate and were willing to testify on his

behalf.   Thus, Petitioner has failed to show how he was prejudiced by counsel's failure to have investigated his potential witnesses and he is not entitled to habeas relief as to this claim.

  d. <u>Failure to Conduct Adequate Pre-Trial Investigation</u>

  Petitioner further claims that trial counsel rendered ineffective assistance by failing to conduct any pretrial investigations in preparation for trial.  Importantly, Petitioner has not indicated what evidence his counsel should have discovered had he been more diligent.

  In this regard, the Petitioner has the burden of setting forth sufficient facts to support each claim.  Moreover, Rule 2(c) of the Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254, expressly provides, in part, that the petitioner "shall set forth in summary form the facts supporting each of the grounds" specified in the petition.  Bald assertions and conclusory allegations do not afford a sufficient ground to provide habeas relief.  <u>Mayberry v. Petsock</u>, 821 F.2d 179, 185 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987).

  There simply is no basis to conclude that additional pre-trial investigation would have lead to any admissible evidence, let alone evidence that would have shown that the result of the proceeding would have been different had it been admitted.  Thus, Petitioner has not demonstrated that he is

entitled to relief with respect to this claim.

### 3. PCRA Counsel's Alleged Ineffectiveness

Next, Petitioner argues that his PCRA counsel was ineffective. In <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 557 (1987), the Supreme Court determined that the Constitution did not require states to provide an avenue for collateral attack of a criminal conviction through the grant of post-conviction proceedings. As there is no constitutional right guaranteeing the availability of state post-conviction proceedings, the Court in <u>Finley</u> determined that a person has no constitutional right to an attorney in such proceedings and, consequently, claims of ineffective assistance of counsel with respect to collateral, post-conviction proceedings cannot form the basis for federal habeas corpus relief. *Id*. Congress codified this legal precept in Section 104 of the AEDPA, codified at 28 U.S.C. § 2254(i). This section now provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Consequently, Petitioner is not entitled to federal habeas corpus relief with respect to any claim of ineffective assistance by his PCRA counsel.

### E. Trial Court's Failure to Appoint Conflict Counsel

Petitioner also claims that the trial court abused it

discretion by failing to remove trial counsel prior to sentencing. This claim is governed under the law set forth in United States v. Goldberg, 67 F.3d 1092 (3d Cir. 1995). In that case, three days before his criminal trial was scheduled to begin, Goldberg filed a motion seeking to remove his attorney, Bradley Lunsford, and to obtain new counsel. After determining that his attorney was providing adequate representation, the trial judge gave Goldberg the option of continuing to represented by Lunsford or proceeding *pro se*; Goldberg chose to remain with Lunsford. Subsequently, the district court granted Lunsford's motion to withdraw and informed Goldberg that he would not receive another appointed attorney because he had the financial means to retain counsel. Goldberg continued to assert his Sixth Amendment right to counsel and requested a continuance to retain new counsel. In denying Goldberg's request for a continuance, the court observed that Goldberg had manipulated the judicial system for his own benefit and, as a result, had waived his right to proceed with counsel. In response, Goldberg stated that he did not make a valid waiver of his Sixth Amendment right. On appeal, Goldberg challenged the district court's order forcing him to keep Lunsford against his will and claimed that the district court had violated his Sixth Amendment right to the assistance of counsel when it forced him to proceed *pro se*.

The Third Circuit determined that a defendant who seeks

appointment of new counsel without good cause, yet objects to being forced to proceed *pro se*, involves a "waiver by conduct/forfeiture with knowledge." *Id*. at 1101. In this situation, the court first must determine whether the reasons for the defendant's request for substitute counsel constitute good cause and are sufficiently substantial to justify a continuance of the trial in order to allow new counsel to be obtained. <u>Goldberg</u>, 67 F.3d at 1098. "Good cause" may be demonstrated through "a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *Id*. (citing <u>Welty</u>, 674 F.2d at 188 and <u>McMahon v. Fulcomer</u>, 821 F.2d 934, 942 (3d Cir. 1987)). In making this inquiry, the court must weigh the competing considerations of efficient administration of criminal justice, the accused's rights, including the opportunity to prepare a defense, the rights of other defendants awaiting trial who may be prejudiced by a continuance, and a determination regarding the question of whether a motion for a continuance is made in bad faith for the purpose of delay or to subvert the judicial proceedings. <u>Goldberg</u>, 67 F.3d at 1098. If the trial court denies the request to substitute counsel and the defendant proceeds with unwanted counsel, a reviewing court will not disturb such a determination unless the court's "good cause" determination was clearly erroneous or the court made no inquiry into the reason for the

defendant's request to substitute counsel. *Id*.

In the instant case, the Superior Court denied Petitioner's claim as follows.

> On October 9, 2002, after the jury submitted its verdict, but before the imposition of sentence, appellant's trial counsel, Charles G. Ross, Jr., Esquire, filed a motion with the court asking to be replaced by conflict counsel because appellant was dissatisfied with his conduct of the case. Ross included a letter that appellant wrote to President Judge Michael Conahan expressing his longstanding dissatisfaction with Ross' representation. Appellant claims that the trial court, without further inquiry, denied the request. Appellant claims that the denial was an abuse of discretion, and that he is therefore entitled to a new trial. Appellant relies on <u>Commonwealth v. Knapp</u>, 542 A.2d 546 (Pa. Super. 1988), for the proposition that dissatisfaction with counsel is not sufficient reason for counsel's removal, but that counsel may be removed for "good cause shown," such as irreconcilable differences. *Id*. at 549.
>
> The record shows that prior to sentencing, the court conducted an inquiry related to the question of trial counsel's removal. Ross stated to the court that appellant did not want him as his lawyer anymore and asked for permission to withdraw. The trial judge, the Honorable Peter Olszewski, responded that he had read the correspondence and thought Ross had done a good job, and Ross agreed. Judge Olszewski then asked appellant to speak. Appellant complained that his trial was not fair, that witnesses testified that did not know him, that the attorney general and police had planted evidence in his case, that the court was biased against him, and that, as an illegal alien, he was glad that he had never become a citizen of the United

States and would prefer deportation. We conclude that appellant's first issue lacks merit, as the court did make an inquiry and concluded that trial counsel could be removed only after sentencing. Appellant now has new counsel for appeal.

1/13/04 Sup.Ct.Op., pp. 1-2 (doc. no. 21-1).

Here, the Court implicitly determined that Plaintiff had not shown "good cause" for the court to appoint him new counsel for sentencing. This Court is required to accept the Superior Court's factual findings unless Petitioner establishes by clear and convincing evidence that the factual determinations by the PCRA Court were erroneous. 28 U.S.C. § 2254(e). He has not met this burden. Nor has he demonstrated that the Superior Court's decision is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Consequently, Petitioner is not entitled to relief with respect to this claim.

## F. Excessive Sentence

Petitioner's final claim challenges the legality of his sentence. Petitioner is not entitled to habeas corpus relief with respect to this claim as he has failed to allege the denial of any federal constitutional right. In this regard, a state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the Constitution or federal law. Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir.), cert. denied, 506 U.S. 977 (1992); Zettlemoyer v.

18

<u>Fulcomer</u>, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991). Thus, a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982). Violations of state law or procedural rules alone are not a sufficient basis for providing federal habeas corpus relief. *Id.* Thus, a writ of habeas corpus is not available when a state prisoner merely alleges that something in the state proceedings was contrary to general notions of fairness or violated some federal procedural right unless the Constitution or other federal law specifically protects against the alleged unfairness or guarantees the procedural right in the state courts.

Generally, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus. <u>Wooten v. Bomar</u>, 361 U.S. 888 (1959). As such, a federal court normally will not review a state sentencing determination that falls within the statutory limit, <u>Williams v. Duckworth</u>, 738 F.2d 828, 831 (7th Cir. 1984), as the severity of a sentence alone does not provide a basis for habeas relief. <u>Smith v. Wainwright</u>, 664 F.2d 1194 (11th Cir. 1981) (holding that a sentence imposed within the statutory limits can not be attacked in habeas proceeding). *Accord* <u>Gleason v. Welborn</u>, 42 F.3d 1107, 1112 (7th Cir. 1994) (internal citation omitted),

*cert. denied*, 514 U.S. 1109 (1995); <u>Walker v. Endell</u>, 850 F.2d 470, 476 (9th Cir. 1987), *cert. denied*, 488 U.S. 926 (1988); <u>Mira v. Marshall</u>, 806 F.2d 636, 639 (6th Cir. 1986); <u>United States v. Myers</u>, 374 F.2d 707 (3d Cir. 1967). Thus, unless an issue of constitutional dimension is implicated in a sentencing argument, this Court is without power to grant habeas relief. <u>United States v. Addonizio</u>, 442 U.S. 178, 186 (1979) (noting that a criminal sentence was not subject to collateral attack unless the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair). *Accord* <u>Colon v. Folino</u>, 2008 WL 144212, at *9 (M. D. Pa. Jan. 11, 2008).

A sentence violates the Eighth Amendment of the Constitution only when it is extreme and "grossly disproportionate to the crime." <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) ("The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime.") (citation omitted). Moreover, it is firmly established that mere discrepancy in the sentences imposed upon two similarly-situated individuals does not constitute a violation of equal protection. <u>Dorszynski v. United States</u>, 418 U.S. 424 (1974); <u>United States v. Palma</u>, 760 F.2d 475 (3d Cir. 1985).

In the case at bar, Petitioner does not allege that the sentencing court lacked jurisdiction or committed a constitutional error making the sentence fundamentally unfair. Instead, he complains that the judge imposed an excessive sentence by imposing the maximum statutory penalty. However, because the imposition of a maximum sentence in Pennsylvania is within the sound discretion of the court, Petitioner's claim does not raise any constitutional question. *See* Medina v. Artuz, 872 F. Supp. 1258 (S.D.N.Y. 1995) (no showing that the sentence was grossly inappropriate to the crime so as to present a federal constitutional question).[2]

Here, the state courts found that the sentencing court imposed a legal sentence within the statutory limits and that the sentencing court gave sufficient reasons to justify its

---

2. *See also* Souch v. Schaivo, 289 F.3d 616 (9th Cir. 2002) (holding that neither an alleged abuse of discretion by the trial court in choosing consecutive sentences, nor the trial court's alleged failure to list its reasons for imposing consecutive sentences, being errors under state law, could form the basis for federal habeas relief); Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994) (concluding, where Nevada prisoner challenged state trial court imposition of consecutive sentences without explanation, "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus"); Herrera v. Artuz, 171 F.Supp.2d 146 (S.D.N.Y. 2001) (holding that state court's decision to impose consecutive sentences did not warrant federal habeas relief, even where prosecution had recommended concurrent sentences, where sentence was within the range prescribed by state statute and the trial court had discretion to impose consecutive terms).

imposition of the maximum penalty. Consequently, Petitioner has failed to show that he is entitled to habeas corpus relief with respect to his sentencing claim.

## G. Certificate of Appealability

28 U.S.C. § 2253(c) codifies the standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."

Petitioner has not made any showing that he was denied any of his constitutional rights. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Lisa Pupo Lenihan
U.S. Magistrate Judge

July 2, 2008

cc: Terrence F. McVerry
United States District Judge


JAY ALONZO
FE-9927
Greensburg, PA 15601